## Case No. 1,761.

### BRACKEN v. JOHNSTON.

[4 Dill. 518; 15 N. B. R. 106; 5 Am. Law Rec. 461; 3 Month. Jur. 629; 4 Cent. Law J. 9; 3 Am. Law T. Rep. (N. S.) 537; 11 Am. Law Rev. 609; 3 N. Y. Wkly. Dig. 573; 1 Cin. Law Bul. 358.][1]

Circuit Court, D. Iowa. Oct. Term, 1876.

BANKRUPTCY—ATTACHMENT OF STATE COURT DISSOLVED BY BANKRUPTCY PROCEEDINGS.

1. An attachment of the property of a debtor is ipso facto dissolved if proceedings in bankruptcy are commenced within four months thereafter, upon which the debtor is adjudicated a bankrupt, and a deed of assignment be made. Rev. St. § 5044; section 14 of original bankrupt act [14 Stat. 522].

[Cited in Re Hazens, Case No. 6,285; McCord v. McNeil, Case No. 8,714; Hatfield v. Moller, 4 Fed. 719.]

2. A creditor who proceeds in a state court by a writ of attachment on which he seizes the property of his debtor, and realizes his judgment obtained in such a suit by a sale of the property attached, is liable to the assignee in bankruptcy of the debtor, appointed under proceedings commenced in the bankruptcy court within four months of the levy of the attachment, although the assignee did not appear or defend the attachment suit, or make any attempt to arrest the attachment proceedings. Wilson v. City Bank, 17 Wall. [84 U. S.] 473, and Eyster v. Gaff, 91 U. S. 521, distinguished.

[In error to the district court of the United States for the district of Iowa.]

This case comes before the circuit court on a writ of error to the district court. The plaintiff in error, as assignee of Browne, a bankrupt, sued the defendant Johnston, for the value of goods seized under a writ of attachment against Browne in favor of Johnston, in the state court, and sold under the proceedings in that case for Johnston's debt. The district court, to which the case was submitted without a jury, made the following finding of facts and conclusions of law, on which it rendered judgment [unreported] in favor of defendant: 1. William P. Browne, the bankrupt, resided at Tama county, Iowa, where also live the parties to this suit. On the 23d of September, A. D. 1872, defendant Johnston commenced suit against Browne, in the district court of Tama county, upon an alleged indebtedness due upon the sale of grain, and sued out of said court in said suit a writ of attachment, which, under the direction and by the personal procurement of the defendant Johnston, was levied upon property described in the petition. 2. That on the 21st day of January, A. D. 1873, and within four months of the suing out of said attachment, a petition in bankruptcy was filed by certain of Browne's creditors, in the United States district court, from whence this suit comes, praying that Browne be adjudged a bankrupt. 3. That on the said 21st day of January, A. D. 1873, Browne was served with the original notice of the suit pending in the state court. 4. That on the 25th day of January, A. D. 1873, the order to show cause in the bankruptcy proceedings was duly issued, was served on the 8th day of February, A. D. 1873; and on the 14th day of February, A. D. 1873, the said Browne was, by order of the court sitting in bankruptcy, duly adjudged a bankrupt. 5. On the 18th day of February, A. D. 1873, Browne, the bankrupt, filed in the district court of Tama county, his answer in the suit brought against him by Johnston, contesting the claim upon which the suit was founded. On the 25th day of February, A. D. 1873, a trial was held in that court, when the issue above joined was found for the plaintiff Johnston, and a judgment rendered in his favor for $2,264.15 and costs, and an order for a special execution to sell the attached property. 6. On the 28th day of February, A. D. 1873, special execution was issued, which, under the direction and procurement of Johnston, was levied upon the attached property as the property of Browne; and afterwards, on the 22d day of March, A. D. 1873, the sheriff, under Johnston's direction, sold the property as belonging to Browne; that Johnston was present at the sale, bid upon some of the property offered, and received from the sheriff the avails of the sale; that the proceeds amounted to $2,349.40, and the costs of the suit and sale were $177.50. 7. That on the same 22d day of March, A. D. 1873, plaintiff was duly elected and qualified as assignee in bankruptcy of the estate of said Browne, and received his deed of assignment as provided by law. 8. That afterwards and previous to the commencement of this suit, plaintiff in error made demand upon said Johnston for a return of said property, which demand was refused and the action commenced. 9. That, at the time Johnston sued out the attachment, he had reasonable cause to believe Browne was insolvent. 10. That the defendant directed the sheriff in the levy of the attachment and execution, and that if Johnston is otherwise liable, his direction and control over the sheriff sufficiently appears.

The court below found as conclusions of law: 1. That the jurisdiction over the property acquired by the state court in the attachment proceedings was not divested by the bankruptcy proceedings. 2. That, under the judgment and order of the state court, the property attached was adjudged to be the property of the defendant in that case, Browne; and that his assignee in bankrptcy is estopped from questioning such adjudication, and that defendant Johnston obtained a good title to the said property under said sale, and that he is not liable to plaintiff in this action for either the property or its proceeds. 3. That the defendant is entitled to judgment for costs in this case against the plaintiff.

The plaintiff sued out a writ of error. [Judgment of the district court reversed.]

H. B. Fouke, for plaintiff in error.
James T. Lane, for defendant in error.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 11 Am. Law Rev. 609, contains only a partial report.]

MILLER, Circuit Justice. The question thus presented to me for consideration is very clear and simple in its statement, but none the less difficult of solution. It is whether a party proceeding by a writ of attachment, and seizing the goods of his debtor, and realizing by judgment and sale under execution the whole or part of his debt, is liable to an assignee in bankruptcy of the debtor, appointed under proceedings instituted in the bankruptcy court within four months of the levy of attachment, though no appearance or defence was made by the assignee in the attachment proceedings, or any attempt to arrest them. I say the question is one not easy of solution, because it occupies debatable ground, in which two important principles of the bankrupt law seem to come in conflict, namely: the principle that no person shall, by a writ of attachment against the bankrupt, obtain a preference for his debt over other creditors, unless issued more than four months before the commencement of the bankruptcy proceedings; and the principle that the state courts are not divested of their jurisdiction of cases pending in them by the initiation of bankruptcy proceedings against one of the parties to such a suit, unless it be brought to the notice of the state court by some appropriate proceeding in that case.

The first principle rests upon the language of section 5044 of the Revised Statutes, which is part of section 14 of the original bankrupt law. It reads as follows: "As soon as the assignee is appointed and qualified, the judge, or, when there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto; and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same has been attached by mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings."

The other principle rests upon the fact in this case that no attempt was made, by the assignee or any one else, to bring to the notice of the state court the fact that the debtor had been declared bankrupt, and that it proceeded in its usual course of judgment, and execution of that judgment, without any apparent error or defect of jurisdiction in these proceedings, and upon certain opinions of the supreme court sustaining its right to do so.

If there can be found any middle ground by which both these principles can be left to their just and proper operation, we ought to adopt it in the solution of this case. I think there is such a ground. The two

opinions of the supreme court in which the authority of the state courts has been most firmly sustained were probably delivered by myself. I mean the case of Wilson v. City Bank, 17 Wall. [84 U. S.] 473, and the case of Eyster v. Gaff, 91 U. S. 521. But in both these cases the proceedings of the court which were upheld were the exercise of the regular and ordinary powers of the court in rendering a judgment or decree against the party before it. And I still adhere to the doctrine that, if, by the usual process of the court, a plaintiff secures a judgment against the bankrupt, which judgment is of itself a lien, or by virtue of the levy of an execution becomes a lien, before the commencement of the bankruptcy proceedings, that lien must prevail; or when the state court, in pursuance of a jurisdiction invoked before the bankruptcy proceedings commenced, enforces a lien which has by the bankrupt law itself a priority over other creditors, as a mortgage or other specific lien, its proceedings are valid and effectual notwithstanding the commencement of proceedings in bankruptcy while they are pending. But there is a very marked difference in the favor with which such a lien should be regarded and a lien obtained by the extraordinary and summary proceeding of attachment, in which the plaintiff, being made aware of the failing condition of his debtor, takes the remedy into his own hands, and, by an ex parte proceeding, appropriates, by his own volition, the debtor's property to the exclusive payment of his own debt. And it was precisely this proceeding which the provision I have cited from the bankrupt law was intended to prevent, by declaring that all such attachments are dissolved by the assignment of the bankrupt's property, if made within four months next preceding the commencement of the bankruptcy proceedings.

The purpose of the act was to put a creditor who undertook to secure a lien by attachment, in precisely the same condition as one who took a preference or lien by the consent of the debtor. In both cases the creditor proceeded at his own hazard. If the debtor escaped the bankruptcy court for the prescribed time, the preference or lien remained valid. If he did not, it is void absolutely. The language of the section I have cited is very strong in this direction, since to repel the idea that the attachment is merely voidable, it is declared that the making of the deed to the assignee shall, by operation of law, vest title to property in the assignee, and dissolve any attachment made within the four months. I think this was intended to mean that, in the contingency mentioned, the attachment was ipso facto dissolved, and the property attached became freed from the effects of the suit, and that it required no judicial proceeding to restore it to that condition.

This view of the matter does not divest

the court in which the attachment suit is pending of its jurisdiction over the case and the parties. It merely declares that the title to the attached property having been vested, by proper judicial proceeding, in the assignee, the lien of the attachment is at an end. The court can proceed to judgment against the party, and issue its execution. If property liable to it can be found, it can be enforced. If not, it is like the judgment in any other case against a debtor without means. And there is no hardship in this, for the reason that the attaching creditor was informed by the provisions of the bankrupt law that he initiated his attachment proceeding subject to its being rendered ineffectual by proceedings in bankruptcy within four months. This view, I think, reconciles the two opposing principles. It leaves the general jurisdiction of this state court, or any other court in which the attachment suit is pending, unaffected; and it can proceed as if no bankruptcy proceeding had been commenced, and its judgment is valid in every other respect except that the lien on the property is gone. It gives full effect to the purpose of the bankrupt law, that no such attachment shall prevail when instituted within four months before that law is called into operation, and in subordination to which principle the attaching creditor instituted his proceedings. The present case very forcibly illustrates the necessity of adopting this rule, if full effect is to be given to the provision of the bankrupt law, for the finding of facts shows that, though the bankruptcy proceedings were instituted within four months after the levy of the attachment, the assignee was not appointed until the very day the property was sold under Johnston's execution. It was, therefore, impossible that the assignee could have interposed at any stage of the proceeding in the state court, to bring to its notice the bankruptcy proceedings, or to procure an order dissolving the attachment, and the creditors whom he represents were without remedy, notwithstanding the positive declaration of the bankrupt law. I am of opinion that, on the facts found by the district court, the defendant, Johnston, was liable for the value of the goods, as evidenced by the sum for which they sold. The judgment of the district court is reversed, and the case is remanded to the district court, with directions to enter a judgment against him accordingly. Judgment accordingly.

NOTE [from original report.]    See McCord v. McNeil [Case No. 8,714]; In re Hazens [Id. 6,285].